ORIGINAL                                    E-filing

David N. Lake, Esq., State Bar No. 180775
1   **LAW OFFICES OF DAVID N. LAKE,**
2    **A Professional Corporation**
    16130 Ventura Boulevard, Suite 650
3   Encino, California 91436
    Telephone: (818) 788-5100
4   Facsimile: (818) 788-5199
    david@lakelawpc.com
5

6   Attorneys for Plaintiffs

7

**FILED**

JAN 29 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

8           **UNITED STATES DISTRICT COURT**

9          **NORTHERN DISTRICT OF CALIFORNIA**

ADR

10
    DONALD SILVERSTRI, DAWN          Case No. **C10-00429 JF**
11  KEER, KIMBERLY MANCELLA,
12  JILL SILVERMAN STRELZIN, and     **CLASS ACTION COMPLAINT**
    CHRISTOPHER LEMOLE, on behalf    **FOR:**
13  of themselves and all others similarly
14  situated,                            1) **VIOLATION OF THE**
                                            **ELECTRONIC DATA**
15          Plaintiffs,                     **PRIVACY ACT;**
                                         2) **VIOLATION OF THE**
16      v.                                  **STATUTORY RIGHT OF**
                                            **PUBLICITY;**
17  FACEBOOK, INC., a Delaware       3) **VIOLATION OF**
    corporation,                         **CALIFORNIA BUS. & PROF.**
18                                       **CODE SECTION 17200** *et seq.*;
            Defendant.                4) **COMMON LAW TORT OF**
19                                       **APPROPRIATION;**
                                      5) **UNJUST ENRICHMENT;**
20                                    6) **VIOLATION OF**
                                         **CALIFORNIA PENAL CODE**
21                                       **§ 502; AND**
                                      7) **INJUNCTIVE RELIEF**
22

23  **CLASS ACTION**

24  **JURY TRIAL DEMANDED**

25

26

27

28

**FILE BY FAX**

1   Plaintiffs DONALD SILVERSTRI, DAWN KEER, KIMBERLY
2   MANCELLA, JILL SILVERMAN STRELZIN, and CHRISTOPHER LEMOLE
3   ("Plaintiffs"), individually and on behalf of all others similarly situated, allege by
4   and through their attorneys, upon information and belief (except as to matters
5   personal to Plaintiffs) as follows:

6
7                              **NATURE OF ACTION**
8       1.    This is a class action against defendant Facebook, Inc. ("Facebook").
9   In recent months, Facebook has violated the privacy rights of the members of the
10  Facebook.com website, misappropriated their personal information, and converted
11  that information for commercial use by means of materially deceptive conduct, as
12  alleged in detail below.

13      2.    The violations that form the basis of this Complaint are serious.
14  Internet users place a high value on the safety and security of their personal
15  information.  This is quite rational: users whose personal information becomes
16  readily available to the public face a number of dangers, not the least of which are
17  identity theft, harassment, and embarrassment.  Federal law enforcement agencies,
18  such as the FBI and the U.S. Postal Inspection Service, have warned that
19  international crime syndicates scour the Internet for personal information which they
20  can use to dupe U.S. citizens into turning over even more personal information,
21  which is then used for purposes of theft and impersonation.   Through the
22  wrongdoing described herein, Facebook has made the "job" of such malefactors
23  considerably easier.

24      3.    Because of the nature of Facebook, it is particularly important that its
25  users ("Users") be provided with a high level of security with regard to their
26  personal information.  Facebook is one of a number of popular websites known as
27  "social networks." Typical Users create "Facebook pages" which often contain their
28  real names; home towns; educational history; present work information; photos of

themselves, family, and friends; causes they support. (Users often create "cause" pages, and encourage other members to "join"); and lists of Facebook members who the User has designated as "friends" (a "Friend List").

4.    Until recently, Facebook has taken heed of Users' need for privacy, and has provided simple "one-click" methods by which they could keep all or almost all of their information private and away from persons who might cause them harm.

5.    In November 2009, however, Facebook suddenly reversed course. Under the guise of giving Users greater control over their personal information, Facebook adopted a new privacy settings system which has been described by Internet experts, academics, and privacy organizations as leading unwary Users into inadvertently revealing large amounts of information about themselves, placing their personal safety and financial security at risk. The new settings are confusing and materially deceptive, and a firestorm of criticism has erupted over these so-called privacy "enhancements." The Electronic Frontier Foundation termed Facebook's statements as to how much privacy its users could now obtain using the revised settings "at best confusing and at worst simply untrue . . . ." Internet expert Jason Calacanis stated even more bluntly on December 13, 2009 that Facebook's actions were "highly unethical" and "deceitful" and opined that:

> Facebook is trying to dupe hundreds of millions of users they've spent years attracting into exposing their data for Facebook's personal gain: pageviews. Yes, Facebook is tricking us into exposing all our items so that those personal items get indexed in search engines–including Facebook's–in order to drive more traffic to Facebook.

6.    Calacanis concluded by stating:

> I've been a member of every social network since Six Degrees and Ryze, almost a decade before Facebook became available to the public, and I was confused by their settings page. An average user, certainly, has no idea what is going on by these changes.

1    7.    On December 17, 2009, Facebook's actions led the Electronic Privacy

2  Information Center ("EPIC") to file a formal complaint with the Federal Trade

3  Commission (the "FTC"). EPIC alleged that Facebook's revised privacy settings

4  result in the disclosure of personal information that was originally kept private.

5  "These changes violate user expectations, diminish user privacy, and contradict

6  Facebook's own representations," rendering them unfair and deceptive trade

7  practices.

8    8.    The common law has long recognized invasions of privacy as tortious

9  because of the clear harm they can cause. These common law prohibitions have

10 been codified by the California legislature and the U.S. Congress. Steep penalties

11 attach to violations of these laws, and rightly so, as reckless disclosure of others'

12 personal and private information imperils their personal and financial security.

13   9.    For the foregoing reasons, Plaintiffs, on behalf of themselves and all

14 Users in the United States, seek a declaration that Facebook's actions are unlawful

15 and materially deceptive and further seek a ruling (by jury verdict or by the Court)

16 that Class members are entitled to both monetary and injunctive relief.

17

18               **JURISDICTION AND VENUE**

19   10.    This Court has jurisdiction over this action pursuant to 28 U.S.C.

20 §1332(d) in that Plaintiffs and Defendant are citizens of different states and the

21 aggregate value of the claims asserted herein exceeds $5 million. This Court also

22 has jurisdiction over this action under 28 U.S.C. § 1331, insofar as the claims are

23 asserted herein under the Electronic Communications Privacy Act, 18 U.S.C. § 2701

24 *et seq.* This Court has ancillary jurisdiction over the related state law claims

25 pursuant to 28 U.S.C. §1367.

26   11.    Venue is proper in this District because a substantial portion of the

27 transactions and wrongs complained of herein occurred in this District. Moreover,

28

-4-

Class Action Complaint

1    Defendant's principal place of business is located in this District and Defendant
2    engaged in numerous activities herein, which give rise to the causes of actions
3    asserted in this Complaint. In addition, Defendant has provided in its Terms of Use
4    that all subscribers bringing any actions they may have must do so in federal or state
5    court in Santa Clara County, California, and that all disputes are governed by
6    California law.

7

8                                  **PARTIES**

9        12.    (a)    Plaintiff Donald Silverstri is a resident of Florida, and a
10    registered user of Facebook.com.

11            (b)    Plaintiff Dawn Keer is a resident of Pennsylvania, and a
12    registered user of Facebook.com.

13            (c)    Plaintiff Kimberly Mancella is a resident of New Jersey, and a
14    registered user of Facebook.com.

15            (d)    Plaintiff Jill Silverman Strelzin is a resident of Illinois, and a
16    registered user of Facebook.com.

17            (e)    Plaintiff Christopher LeMole is a resident of California, and a
18    registered user of Facebook.com.

19        13.    Defendant is a Delaware corporation with its principal place of
20    business at 156 University Avenue, Palo Alto, California 94301.

21

22                          **FACTUAL ALLEGATIONS**

23    **A.    Facebook Adopts a Materially Deceptive and**
24    **Misleading Set of "Privacy Controls"**

25

26        14.    Facebook is the largest social networking site in the world. Facebook
27    is estimated to have over 350 million individual worldwide subscribers, and annual
28    revenues of $500 million per year. The company claims to have more than 100

1   million U.S. citizens on Facebook.

2      15.   Facebook allows members to communicate and share information with
3   friends, family, coworkers, classmates, and other people who share similar interests,
4   or who are interested in exploring the interests and activities of others.   The
5   company requires Users to register to use these services.   Registration requires
6   providing a name, gender, date of birth and a valid e-mail address. After providing
7   this information, registered Users can create personal profiles, and post messages,
8   photos, and videos.  To create profiles, they are prompted to provide the names of
9   their high schools, colleges, and employers.   They can expand their profiles by
10   adding information about various interests and hobbies.  They may also send e-mail
11   type messages to other Users on the site. Users can also add friends and send them
12   messages, and update their profiles to notify friends about their activities,
13   whereabouts or musings.  Additionally, Users can join networks organized by city,
14   workplace, school, and region.

15      16.   Signing up for Facebook is a pecuniary transaction in that Users
16   exchange their property (*i.e.*, certain personal information) for unfettered use of the
17   Facebook website and services.  Facebook then monetizes this personal information
18   through the sale of targeted advertising by well-known merchants and others.  These
19   advertisements appear on the Users' "home page" or on a page that contains items
20   posted by their friends known as the "news feed" page.  Financial academics have
21   recognized that: "[r]egardless of use, personal information of users has a great value
22   on the Web today."  Plaintiffs have no complaint as to the limited commercial use of
23   their personal information by Facebook in this manner (the "Expected Commercial
24   Use").  Plaintiffs have serious complaint with the deceptive actions Facebook has
25   recently taken, without full and complete disclosure and effective prior
26   authorization, to allow almost everyone access to Users' personal information,
27   including hackers, scammers, criminals, sociopaths and the like.  Facebook's claim
28   was that the new privacy settings were designed to empower Users with greater

1  control over their personal information, when the truth is anything but.

2      17.    Indeed, the market and financial incentives for Facebook to collect,
3  harvest, mine and process its members' personal information are extremely high.
4  Facebook generates revenue primarily through various types of advertisements
5  which are targeted to Users based on their profiles and information. In fact, the data
6  collected from its members is the key commercial asset Facebook employs to sell
7  advertising and drive traffic to the Facebook website.

8      18.    Facebook was once known for protecting privacy to the point of
9  exclusivity. Indeed, its original privacy policy acknowledged that Users "may not
10  want everyone in the world to have the information you share on Facebook."

11      19.    On February 4, 2009, however, Facebook revised its Terms of Service,
12  asserting broad, permanent, and retroactive rights to Users' information, even as to
13  Users who deleted their Facebook accounts. The Company stated it could make
14  public a User's "name, likeness and image for any purpose, including commercial or
15  advertising."

16      20.    Users objected to these revisions and Facebook reversed them on the
17  eve of an EPIC complaint to the Federal Trade Commission.

18      21.    Facebook again revised its privacy policy on or about April 24, 2009,
19  November 19, 2009, and December 9, 2009. These last two revisions are the subject
20  of this Complaint.

21      22.    Facebook has repeatedly given Users the impression that it values and
22  upholds User privacy. In June 2009, Facebook's Chief Privacy Officer, Chris Kelly,
23  represented that Users "may not want everyone in the world to have the information
24  you share on Facebook," and that Users "have extensive and precise controls
25  available to choose who sees what among their network and friends, as well as tools
26  that give them the choice to make a limited set of information available to search
27  engines and other outside entities."

28      23.    He also stated that Facebook gives "users controls over how they share

their personal information that model real world information sharing and provide them transparency about how we use their information in advertising." Kelly further stated, "many of our users choose to limit what profile information is available to non-friends. Users have extensive and precise controls available to choose who sees what among their networks and friends, as well as tools that give them the choice to make a limited set of information available to search engines and other outside entities."

24. In its "Statement of Rights and Responsibilities" under "Privacy Policy," Facebook represents that:

> Your privacy is very important to us. We designed our Privacy Policy to make important disclosures about how you can use Facebook to share with others and how we collect and can use your content and information. We encourage you to read the Privacy Policy, and to use it to help make informed decisions.

Further, under "Sharing Your Content and Information," the website states:

> You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings.

25. Despite holding itself out as valuing User privacy, the Company makes public and/or disseminates personal User information to third parties for commercial purposes or economic benefit.

26. Prior to the most recent November and December 2009 revisions, the only categories of personal information publicly available were (i) a User's name and (ii) networks the User belonged to. A User had the option of including additional information in his or her public search listing, including (i) the User's profile pictures; (ii) a Friend List; (iii) a link to add the User as a friend; (iv) a link to send the User a message; and (v) pages the User is a fan of.

27. In connection with the most recent revisions, Facebook sent Users an

1    "Important Message from Facebook" that represented that Facebook was increasing

2    privacy controls. The message began, "[w]e're making some changes to give you

3    more control of your information" and "added the ability to set privacy on

4    everything you share," as the image below illustrates:



15    28.    This message was materially misleading, confusing, and disingenuous.

16    In fact, changes to the privacy settings that Facebook implemented and represented

17    to *increase* User privacy had the outright opposite effect of resulting in the public

18    dissemination of personal information that was originally private. The Company

19    now makes the following categories of personal data "publicly available

20    information": (i) Users' names; (ii) profile photos; (iii) Friend Lists; (iv) pages

21    Users are fans of, including controversial political causes, organizations,

22    individuals, and products they support; (v) their genders; (vi) their geographic

23    regions; and (vii) networks they belong to.

24    29.    Further, Facebook sets the default privacy setting for certain types of

25    information Users post on Facebook to "everyone."

26    30.    Facebook allows "publicly available information" to "everyone" to be:

27    "accessed by everyone on the Internet (including people not logged into

28    Facebook);" made subject to "indexing by third party search engines;" "associated

1  with you outside of Facebook (such as when you visit other sites on the internet);"

2  and "imported and exported by us and others without privacy limitations."

3      31.  As the *New York Times* has observed, "[u]nfortunately, most Facebook

4  users likely opted for the recommended settings without really understanding what

5  they were agreeing to.  If you did so, you may now be surprised to find that you

6  inadvertently gave Facebook the right to publicize your private information

7  including status updates, photos, and shared links."  Indeed, Facebook now even

8  "pre-clicks" certain options which diminish privacy, a method known in the Internet

9  and marketing industries as a "negative option," and a practice proven to be

10  deceptive, confusing and misleading.

11      32.  Not only do the revised privacy settings result in the disclosure of the

12  aforementioned personal information, impacting privacy directly, but the revelation

13  of this data has other devastating privacy implications.  Based on Users' Friend

14  Lists, MIT researchers discovered that, "just by looking at a person's online friends,

15  they could predict whether the person was gay."  Some criminal impersonators use

16  Friend Lists to contact a User's friends seeking funds needed to help in a concocted

17  emergency situation.

18      33.  Facebook claims that its revised privacy policy still enables users to

19  "opt-out" of the Facebook Platform and Facebook Connect altogether through the

20  company's privacy settings.

21      34.  The tools provided by Facebook to its Users are materially misleading

22  and very difficult for them to use.  There are at least 29 different privacy and

23  security settings spread over numerous web pages.  (Additionally, applications

24  which use data obtained from Facebook each have their own privacy settings.)  In

25  addition, there are several additional web pages devoted to a discussion of privacy

26  issues, including a long and detailed Privacy Policy.  None of the foregoing is

27  designed to explain how a User can best protect his information and data.  Rather,

28  the default privacy settings are all set at the minimum level of protection.  As a

1  result, the privacy setting procedures are grossly ineffective and Users are misled
2  into allowing Facebook to having their personal information easily accessed for
3  commercial use, exposing them to identity theft, harassment, embarrassment,
4  intrusion, and all types of cybercrime.

5  **B.   Facebook Inappropriately Reveals Excessive Personal User Information**
6  **to Third-Party Application Developers and Websites**

7      35.   As part of the November 2009 revisions to the privacy policy,
8  Facebook caused the Users' privacy settings to default to the settings which
9  permitted their private information to be fully available to third-party applications
10  and to data miners on the internet, such as Google.com. In so doing, Facebook
11  misleadingly told Users in its revised privacy policy that as a User, "you can control
12  how you share information with [ ] third-party applications and websites through
13  your application settings." The control mechanisms provided, however are
14  materially deceptive, confusing, and ineffective. Indeed, the new privacy settings
15  permit third-party application developers and websites to access more information
16  than Facebook previously authorized.

17      36.   According to Facebook:

18      Examples of the types of information that applications and websites
19      may have access to include the following information, to the extent
        visible on Facebook: your name, your profile picture, your gender,
20      your birthday, your hometown location (city/state/country), your
        current location (city/state/country), your political view, your
21      activities, your interests, your musical preferences, television shows in
22      which you are interested, movies in which you are interested, books in
        which you are interested, your favorite quotes, your relationship status,
23      your dating interests, your relationship interests, your network
24      affiliations, your education history, your work history, your course
        information, copies of photos in your photo albums, metadata
25      associated with your photo albums (e.g., time of upload, album name,
26      comments on your photos, etc.), the total number of messages sent
        and/or received by you, the total number of unread messages in your
27      in-box, the total number of "pokes" you have sent and/or received, the
28      total number of wall posts on your Wall, a list of user IDs mapped to

-11-
Class Action Complaint

1    your friends, your social timeline, notifications that you have received
2    from other applications, and events associated with your profile.

3        37.    In the limited circumstances in which Users have the option of
4    withholding information from third-party application developers, the new privacy
5    policy makes doing so far more confusing and cumbersome.

6        38.    Third-party application developers create applications and games on
7    Facebook for Users to utilize. They access "profile, friend, page, group, photo, and
8    event data," through the Facebook Application Programming Interface (the "API").
9    The API is a detailed group of commands and interfaces which permit an
10    application to run on Facebook.

11        39.    The original privacy settings contained a universal one-click option to
12    prevent the disclosure of personal information through the Facebook API systems,
13    as the image below indicates:

14        o Do not share any information about me through the
                        Facebook API
15

16        40.    Under the revised settings, Facebook has eliminated the one-click
17    option and substituted it with the setting demonstrated below:

18    ///

19    ///

20

21

22

23

24

25

26

27

28

**What your friends can share about you through applications and websites**

When your friend visits a Facebook-enhanced application or website, they may want to share certain information to make the experience more social. For example, a greeting card application may use your birthday information to prompt your friend to send a card.

If your friend uses an application that you do not use, you can control what types of information the application can access. Please note that applications will always be able to access your publicly available information (Name, Profile Picture, Gender, Current City, Networks, Friend List, and Pages) and information that is visible to Everyone.

- Personal info (activities, interests, etc.)
- Status updates
- Online presence
- Website
- Family and relationship
- Education and work
- My videos
- My links
- My notes
- My photos
- Photos and videos of me
- About me
- My birthday
- My hometown
- My religious and political views

41.   The revised setting states that "applications will always be able to access [User] publicly available information (Name, Profile Picture, Gender, Current City, Networks, Friend List, and Pages) and information that is available to Everyone," making publicly available information mandatorily accessible to third parties.  A User merely has the option to safeguard other personal information by unchecking their respective boxes.

42.   Thus, the new "security setting" mandates that the Facebook Platform share Facebook Users' personal information with application developers without their knowledge or consent, and the Users have no way to countermand this change.

43.   Thus, currently, Facebook does not present the User the realistic option to restrict third party access to all User information through the Facebook Platform.

44.   Users can block third-party applications from attaining personal information through privacy controls which are deceptive and confusing, and which

-13-

Class Action Complaint

1  result in Users unwittingly maximizing the unintentional public disclosure of
2  personal information.  These controls require Users to search the Application
3  Directory, visit the application's "about" page, click a small link on that page, and
4  then confirm their decisions.  To block the more than 350,000 applications from
5  accessing their information, Users would have to perform these steps for every
6  single application.  (Even assuming a User has only 20 applications, locating and
7  correctly setting the myriad privacy settings of each such application is daunting.)

8      45.    A great majority of the time, Facebook provides third-party application
9  developers with more information than their respective applications require.
10  According to a 2007 University of Virginia study of Facebook applications, "90.7%
11  of applications are being given more privileges than they need."

12      46.    Contrary to the ideals it represents in its privacy policy, Facebook has
13  been implementing policies that decrease user privacy and continues to do so.  On
14  January 20, 2010, it launched a program making the e-mail addresses of Users more
15  accessible to third-party developers, personal information Facebook requires Users
16  to provide but that is not necessarily available to others.

17  **C.    Opposition to Facebook's Misleading Privacy Changes**

18      47.    Many Facebook Users have voiced opposition to the company's
19  Privacy Policy alterations.  One Facebook group, entitled "Petition: Facebook, stop
20  invading my privacy!", states on its home page:

21      On December 9, 2009 Facebook once again breached our privacy by
22  imposing new 'privacy settings' on 365+ million users.  These settings
    notably give us LESS privacy than we had before, so I ask, how
23  exactly do they make us more secure? . . . Perhaps the most frustrating
    and troublesome part is the changes Facebook made on our behalf
24  without truly making us aware or even asking us.
25

26      48.    Additionally, *New York Times* technology writer Brad Stone invited
27  readers to comment on their interpretations of the changes.  He received more than
28  50 responses, most of which expressed concern, confusion, or anger.  One User

-14-

1  complained:

2      I find the changes to be the exact opposite of what Facebook claims
3  them to be. Things that were once private for me, and for carefully
    selected Facebook friends, are now open to everyone on the Internet.
4  This is simply not what I signed up for. These are not the privacy
5  settings I agreed to. It is a complete violation of privacy, not the other
    way around.

6

7      49.  In an article entitled "Facebook's Great Betrayal", Internet magazine

8  *Gawker* summed up the degree to which Facebook members have been victimized

9  by the new privacy practices:

10      Its new privacy policy have turned the social network inside out:
    millions of people have signed up because Facebook offers a sense of
11  safety. For the last five years — as long as you're relatively careful
    about who you accept as your friends — what you do and say on
12  Facebook for the most part stays on Facebook. Katie Couric's
13  daughter first posted pictures of her famous mom dancing silly in
    2006, but it took three years for them to leak to us. (Thank you
14  tipsters!) But virtually overnight and without a clear warning,
15  Facebook has completely reversed those user expectations. Their new
    privacy settings amount to making anything you post on Facebook to
16  be public, unless you go to great lengths to keep your info private.

17

18  The most insidious part of Facebook's scheme to expose user data has
    been how the company framed them, claiming to want to enhance
19  privacy. In an open letter to his 350 million+ users, CEO Mark
20  Zuckerberg claimed he believed the old privacy framework was "no
    longer the best way for you to control your privacy," and that the new
21  system would give people "even more control of their information." It
22  would be "simpler" and finer-grained.

23  But when the system came out a week later, it actually gave less, not
24  more, control over information. Gone was the ability to hide your
    friends list, profile pictures, fan pages and network membership from
25  all strangers; Facebook's new, formal privacy policy explicitly made
26  this information public (despite the ability to keep some of it, like the
    friends list, off your profile page).

27

28                                ***

1

2
But it's not just that Facebook is tricking its users; it's betraying them.
It did so when it literally communalized private friend lists that people
3
spent years accumulating, without which their accounts would be
4
useless. It did so when it mislead them by saying it wanted to enhance
their privacy, when the real goal was growth and profit.
5

6
## CLASS ACTION ALLEGATIONS
7
50.    Plaintiffs bring this action pursuant to Rules 23(a), (b)(1), (b)(2) and
8
(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others
9
similarly situated. Plaintiffs seek to represent a Class consisting of all persons in the
10
United States who presently have Facebook accounts.
11
51.    Subject to additional information obtained through further investigation
12
and discovery, the foregoing definition of the Class may be expanded or narrowed
13
by amendment thereto.  Specifically excluded from the Class are the officers,
14
directors, agents, trustees, parents, children, corporations, trusts, representatives,
15
employees principals, servants, partners, joint ventures or entities controlled by
16
Defendant and their heirs, successors, assigns or other persons or entities related to
17
or affiliated with Defendants and/or their offices and/or directors, or any of them;
18
the Judge assigned to this action and any member of the Judge's immediate family.
19
52.    **Numerosity - Fed.R.Civ.P. 23(a)(1)**-  Members of the Class are so
20
numerous that their individual joinder is impracticable. Plaintiffs are informed and
21
believe that the proposed Class should contain millions of members.  The precise
22
number of Class members is unknown to Plaintiffs. The number of Class members
23
is known to Defendant.
24
53.    **Existence and Predominance of Common Questions of Fact and**
25
**Law - Fed.R.Civ.P. 23(a)(2), 23(b)(3)**- There are questions of law and fact of
26
general interest to the Class. The common questions include, but are not limited to,
27
the following:
28

a.  Whether Facebook has exceeded its authorized access to Users' personal information and thereby improperly obtained that information in violation of the provisions of the Electronic Data Privacy Act;

b.  Whether Facebook has improperly invaded Users' privacy by misappropriating or converting their names or likenesses in violation of California Civil Code §3344;

c.  Whether Facebook has violated California Bus. & Prof. Code §17200 *et seq.*;

d.  Whether Facebook has violated California Penal Code § 502;

e.  Whether Facebook has committed the common law tort of wrongful misappropriation;

f.  Whether Defendant has been unjustly enriched as a result of the conduct described herein;

g.  Whether the Plaintiffs and Class are entitled to declaratory and injunctive relief; and

h.  Whether Defendant's conduct caused damages to Plaintiffs and members of the Class and the measure of such damages.

54.  The defenses of Defendant, to the extent that any such defenses apply, are applicable generally to Plaintiffs and the entire Class and are not distinguishable as to proposed Class members.

55.  **Typicality - Fed.R.Civ.P. 23(a)(3)-**  Plaintiffs' claims are typical of the claims of the Class as a whole which has sustained and/or will sustain damages as a proximate or legal result of the common course of conduct of Defendant. Plaintiffs' claims are typical of the Class because Defendant subjected all Class members to the same course of conduct.

56.  **Adequacy - Fed.R.Civ.P. 23(a)(4)-**  Plaintiffs will fairly and adequately protect the interests of the Class and have no interest which is antagonistic to those of the Class. Plaintiffs have retained counsel that are highly

1 | experienced in the prosecution of complex consumer class action litigation.

2 | 57. **Superiority - Fed.R.Civ.P. 23(b)(3)-** A class action is superior to
3 | other available means for the fair and efficient adjudication of the claims of
4 | Plaintiffs and members of the Class. The injury suffered by each individual Class
5 | member is relatively small, given the burden and expense of individual persecution
6 | of the complex and extensive litigation necessitated by Defendant's conduct. It
7 | would be virtually impossible for members of the Class individually to redress
8 | effectively the wrongs done to them. Even if the members of the Class could afford
9 | such individual litigation, the court system could not.

10 | 58. Individualized litigation presents a potential for inconsistent or
11 | contradictory judgments arising from the same set of facts. Individualized litigation
12 | increases the delay and expense to all parties and to the court system, presented by
13 | the complex legal and factual issues of the case. By contrast, the class action device
14 | presents far fewer management difficulties and provides the benefits of single
15 | adjudication economy of scale and comprehensive supervision by a single court.

16 | 59. In the alternative, the Class may be certified under Rule 23(b)(1) and/or
17 | (b)(2) because:

18 | a. The prosecution of separate actions by individual
19 | Class members would create a risk of inconsistent or
varying adjudication with respect to individual Class
20 | members that would create incompatible standards of
21 | conduct for Defendants.

22 | b. The prosecution of separate actions by individual
23 | Class members would create a risk of adjudication with
respect to them that would as a practical matter be
24 | dispositive of the interests of other Class members not
25 | parties to the adjudication or substantially impair or
impede their ability to protect their interests; and/or
26 |

27 | ///

28 |

c.   Defendants have acted or refused to act on the grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the class as a whole.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF THE ELECTRONIC DATA PRIVACY ACT

60.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth herein.

61.   Defendant has violated the Electronic Data Privacy Act (the "EDPA").

62.   Defendant operates an "electronic communications service", as defined in 18 U.S.C. §2510(15).  Facebook provides to Users the ability to send or receive electronic communications to any of Facebook's millions of members.

63.   Pursuant to the EDPA, electronic storage includes any storage of communications by an electronic communication service for purposes of backup protection of such communication.  The Facebook website serves as backup both for Users and Facebook of all communications, internal e-mails, and postings.

64.   Pursuant to 18 U.S.C. § 2701(a), whoever intentionally exceeds an authorization to access that facility and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system, has violated the EDPA.  Defendant has violated this provision of the EDPA.

65.   Additionally, pursuant to 18 U.S.C. § 2702(a), a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service.  Defendant has violated this provision as well.

66.   By reason of the foregoing acts, Plaintiffs and the Class are entitled to actual and statutory damages for each violation, as well as attorneys' fees as

provided in 18 U.S.C. § 2707(c).

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE STATUTORY RIGHT OF PUBLICITY

67.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth herein.

68.    Under California Civil Code §3344, Defendant is prohibited from knowingly using "another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . ."

69.    Defendant's conduct as described herein constitutes the use of Users' names, photographs, or likenesses without proper prior consent.

70.    By reason of the foregoing, Defendant is liable for actual and statutory damages to Plaintiffs and the Class as provided in California Civil Code §3344(a).

## THIRD CLAIM FOR RELIEF
## VIOLATION OF CALIFORNIA BUS. & PROF. CODE §17200 *et seq.*

71.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth herein.

72.    Facebook's actions, which had the effect of inducing Users to unwittingly permit disclosure of sensitive personal information, constituted an unfair, unlawful, and deceptive business practice, in violation of Cal. Bus. & Prof. Code § 17200.

73.    By reason of Defendant's misstatement and omissions, Plaintiffs and all Class members have suffered injury in fact and have lost money or property as a

1 │ result of the alleged violations.

2 │     74.   Plaintiffs and the Class are entitled to restitution of their property, and
3 │ the value of that property. Such restitution may be made by: (a) a return to the
4 │ privacy settings in place prior to the improper conduct alleged herein; and/or (b) the
5 │ disgorgement of ill-gotten gains.

6 │     75.   Defendant's actions have caused and will cause Plaintiffs and all Class
7 │ members to be exposed to threats to their personal and financial security, harms
8 │ which cannot readily be measured by money damages and for which there is no
9 │ adequate remedy at law. Accordingly, Plaintiffs and the Class members are entitled
10 │ to injunctive relief under Cal. Bus. & Prof. Code §§ 17203 and 17204.

11 │ **FOURTH CLAIM FOR RELIEF**
12 │ **COMMON LAW TORT OF APPROPRIATION**

13 │     76.   Plaintiffs repeat and re-allege each and every allegation contained in
14 │ paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth
15 │ herein.

16 │     77.   Defendant's actions constitute the common law tort of wrongful
17 │ appropriation in that such conduct involves: (1) Defendant's use of the Users'
18 │ identities; (2) the appropriation of Users' names or likenesses to Defendant's
19 │ advantage, commercially or otherwise; (3) lack of Users' consent; and (4) resulting
20 │ injury. For purposes of this Fourth Claim for Relief, Plaintiffs disclaim any
21 │ allegation that Defendant has acted "knowingly."

22 │     78.   By reason of the foregoing, Defendant is liable in damages to Plaintiffs
23 │ and the Class for their actual damages, as may be measured by the value of the
24 │ property misappropriated to Defendants.

25 │ **FIFTH CLAIM FOR RELIEF**
26 │ **UNJUST ENRICHMENT**

27 │     79.   Plaintiffs repeat and re-allege each and every allegation contained in
28 │ paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth

-21-
Class Action Complaint

1  herein.

2  80.  Defendant has benefitted and been enriched by the above alleged

3  conduct.  Defendant has collected fees and generated revenue from the unlawful

4  conduct described herein.

5  81.  Defendant has knowledge of this benefit.

6  82.  Defendant has voluntarily accepted and retained all benefit that it

7  received regarding the acts described herein.

8  83.  The circumstances, as described herein, render it inequitable for

9  Defendant to retain the ill-gotten benefit without paying the value thereof to

10  Plaintiffs and the Class.

11  84.  Plaintiffs and the Class are entitled to the amount of Defendant's ill-

12  gotten gains, including interest, resulting from its unlawful, unjust, unfair and

13  inequitable conduct, as alleged herein.  Plaintiffs and the Class may make claims on

14  a pro rata basis for restitution.

15  85.  Accordingly, Plaintiffs seek the imposition of a constructive trust on

16  those monies by which the Defendant has been unjustly enriched as a result of the

17  unlawful practices described herein.

18  **SIXTH CLAIM FOR RELIEF**

19  **VIOLATION OF CALIFORNIA PENAL CODE § 502**

20  86.  Plaintiffs repeat and re-allege each and every allegation contained in

21  paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth

22  herein.

23  87.  As a result of the wrongs committed here Defendant has knowingly and

24  without permission caused to be accessed the personal information of Users, within

25  the meaning of California Penal Law § 502(a)(7).

26  88.  This section provides for a private right of action for anyone who has

27  suffered a violation of this statute and provides for the recovery of compensatory

28  damages as well as the imposition of injunctive relief or other equitable relief, and

-22-

Class Action Complaint

1 | an award of attorneys' fees.

2 |     89.   As a result of the Defendants' conduct, it is liable to Plaintiffs and the

3 | Class for violation of § 502.

4 | **SEVENTH CLAIM FOR RELIEF**
5 | **INJUNCTION**

6 |     90.   Plaintiffs repeat and re-allege each and every allegation contained in

7 | paragraphs 1 through 59, inclusive, and incorporate them as though fully set forth

8 | herein.

9 |     91.   Absent a reformation of Facebook's business practices, Plaintiffs and

10 | the Class will be faced with the bringing of successive actions at law to compensate

11 | them for past wrongs. Since successive actions at law for the same conduct are not

12 | favored and Cal. Bus. & Prof. Code § 17200 and California Penal Law § 502

13 | specifically authorize the entry of an Injunction, the entry of an Injunction is proper

14 | here. Moreover, the Defendant's invasions of privacy and unauthorized release of

15 | private information subject Plaintiffs and the Class to types of harm that cannot be

16 | fully compensated in a pecuniary fashion.

17 |     92.   Defendant knew and knows that the acts and practices complained of

18 | herein are materially deceptive and misleading, and pose certain intangible dangers.

19 |     93.   There is every reason to believe that if the conduct complained of

20 | herein is not enjoined, Defendant will continue to mislead Users into disclosing

21 | personal information for Facebook's advantage, in violation of statutory and

22 | common law.

23 |     94.   As to Defendant's continuing illegal commercial efforts and especially

24 | as to its intangible effects, Plaintiffs and the Class have no adequate remedy at law.

25 |     95.   Accordingly, a permanent injunction should enter preventing and

26 | enjoining Defendant from operating Facebook in such a deceptive and unfair

27 | manner, causing the unwanted disclosure of personal information. Plaintiffs request

28 | that the Court Order that Facebook, at a minimum, take the following specific

actions as the required equitable remedies:

        a.    The required dissemination of a detailed plain-language notice to Users explaining that prior privacy settings were defaulted to an unreasonably low level; explaining that at these default settings, data miners such as Google.com were able to capture the Users' personal information; and that at the prior default privacy settings, Users' personal information was open to misuse. The Notice should also make Users aware of the new features described in ¶ 95(c) below.

        b.    Require Facebook to change certain default privacy settings as follows:

           i.    **Public Search Results** Default to Not Allow;

           ii.    **Facebook Search Results** Default to Friends;

           iii.    **Religious and Political Views** Default to Friends;

           iv.    **Family and Relationship** Default to Friends;

           v.    **Posts by Me** Default to Friends of Friends;

           vi.    **Personal Info** Default to Friends of Friends;

           vii    **Applications and Websites Enabled by a User As to His Own Information** Default to the disclosure of Personal Info and Online presence only; and

           viii.    **Applications and Websites Enabled by Another As to a User's Information** Default to Not Allowed.

        c.    Require Facebook to institute privacy and security User Help features as follows:

           i.    Provide an 800 number, and live chat system where Users can obtain information in English and Spanish about the privacy and security settings in Facebook and obtain meaningful answers to their questions as provided by knowledgeable technical personnel;

           ii.    Provide an on-site video and make available a PowerPoint presentation which in plain English and Spanish proceeds through all of the privacy

1   and security settings, explaining what they mean and explaining what the minimum
2   settings should be to keep Users safe; and

3          iii.    A complete redraft of the Facebook's Privacy Policy in
4   plain English and Spanish to remove any statements which are not accurate and to
5   explain the Policy in a manner consistent with the above mandated changes.

6          d.    Requiring Facebook to require any software application creators
7   wherein the software is linked to Facebook, to provide that a privacy webpage
8   appear directly after a User signs in to use such application for the first time,
9   explaining the privacy and security features and settings of the application in plain
10  English and Spanish, and providing guidance as to how to select the proper privacy
11  and security settings at levels appropriate so as to properly protect the Users'
12  privacy and security.

13  96.    Cause Facebook to take such other affirmative action as necessary to
14  effect a just resolution of this action as the disclosure of further information would
15  require.

16
17
18                              **PRAYER**

19      **WHEREFORE**, Plaintiffs pray for the following relief:

20  1.    For an Order certifying that this action may be maintained as a class
21  action against Defendant, appointing Plaintiffs and their counsel to represent the
22  Class and directing that reasonable notice of this action be given by the Defendant to
23  the Class;

24  2.    For damages, restitution and disgorgement as to Plaintiffs' statutory
25  and common law causes of action, according to proof, including prejudgment
26  interest as allowed by law;

27  3.    For an injunction as set forth above;

28  4.    For an award of reasonable attorneys' fees to Plaintiffs' counsel,

1    expert's fees, and reimbursement of reasonably incurred expenses; and

2        5.    That Plaintiffs and the Class be entitled to such other and further relief

3    as this Court may deem just and proper.

4    ## JURY DEMAND

5    To the full extent available, Plaintiffs demand a trial by jury.

6

7    DATED: January 28, 2010          LAW OFFICES OF DAVID N. LAKE

8

9                                By: _____

10                                  DAVID N. LAKE
                               Attorneys for Plaintiffs

11   **Of Counsel:**

12   Brian M. Felgoise, Esq.
**FELGOISE LAW FIRM**

13   261 Old York Rd. Suite 423

14   Jenkintown, PA 19001-2616
215-985-0500

15   215-985-0850 (Fax)

16   Felgoiselaw@verizon.net

17

18

19

20

21

22

23

24

25

26

27

28